STATE *vs.* LEWIS B. PETERSON.

Franklin.    Opinion September 11, 1879.

*Practice.   Instruction—Misnomer.*

A motion to set aside a verdict in a criminal case as being against evidence can only be heard at *nisi prius.*

In the trial of the defendant on an indictment for incest with his daughter Etta Peterson, where proof was offered that her name was Mary Etta Peterson, an instruction that if the defendant committed the crime with his daughter and she was commonly and generally known by the name of Etta Peterson, it was sufficient—was held correct.

In the trial of an indictment for incest with the defendant's daughter about whose real name there was conflicting testimony, a memorandum covering her photograph purporting to be signed by the daughter is not admissible in the absence of evidence that it was her hand writing.

ON EXCEPTIONS.

Indictment for incestuous fornication with defendant's daughter, Etta Peterson. The government introduced one Ebenezer Chandler, who showed his commission, as an ordained minister of the gospel, authorizing him to solemnize marriages, during the pleasure of the governor, issued by Governor Kent in 1841, and said commission was introduced in evidence. He was then (subject to objection) allowed to read his record of a marriage of Lewis B. Peterson and Mary J. Gammon, solemized May 6, 1860, in Franklin county by him, and said record was put in as evidence, said commission and record being in due form. He was then asked if he recognized the prisoner at the bar, and his answer was : "I should not know that I had ever seen him." There was no other evidence from said Chandler of identity of the defendant as being the party that said Chandler married. There was evidence tending to show that the mother of the defendant's daughter with whom the crime is alleged to have been committed, bore the name of Mary Jane Gammon before her marriage. There was evidence tending to show that said Lewis B. Peterson and Mary Jane Gammon lived together as husband and wife from the date of the marriage to the time of said Mary Jane's death, and that they had during that time two and only two children, one daughter and one son, and the defendant testifying in

his own behalf stated that the girl was his own daughter. The court submitted the question to the jury as a matter of fact, upon this evidence, whether the defendant was lawfully married to said Mary Jane Gammon. There was evidence that this daughter called Etta, was the daughter of said Mary Jane. The defendant introduced evidence to show that the real name of the girl (with whom the crime is alleged to have been committed) is "Mary Etta Peterson," but that she is commonly called "Etta Peterson." Defendant's counsel contended that if her name was in fact Mary Etta Peterson, the defendant could not be found guilty under this indictment, but the court instructed the jury, that "if the defendant committed the crime with his daughter, and she is commonly and generally known by the name of Etta Peterson, that is sufficient." Defendant offered a memorandum, written on a piece of paper attached to, and covering a photograph, in the year 1878, purporting to be signed by said girl, for the purpose of showing how she wrote her name, but it was excluded by the court. The verdict was guilty.

The defendant filed a motion that the verdict be set aside for the reason that one of the jurors was related to the defendant within the sixth degree, and the evidence was taken to establish that fact. The motion was overruled by the court. The motion was as follows: "And now after verdict against him the defendant comes and moves that the verdict be set aside for the following reasons, viz: before the trial commenced the jurors who tried the case were inquired of by the court if any one of them was related to the defendant within the 6th degree or the degree of 2d cousins, and particularly John B. Peterson, one of the jurors, was so inquired of, but denied all relationship between them. Since the rendition of said verdict the defendant has learned that he can prove that said juror was at the time of trial related to the defendant by consanguinity within the sixth degree, and can prove the fact by Charles Peterson, the father of said John M. Peterson, who is a brother to the grandfather of said Lewis B., and by said Lewis B." But no evidence was furnished the law court.

Defendant alleged exceptions.

*Elias Field*, county attorney, for the state.

*H. L. Whitcomb*, for the defendant.

APPLETON, C. J. There are no exceptions to any ruling of the presiding justice as to what would constitute a legal marriage. It is therefore to be presumed that the instructions on this subject were satisfactory.

Whether there was a marriage was a matter of fact to be determined by the jury. The evidence received was admissible. Whether it was sufficient to justify the verdict is not a question submitted to our determination. If the finding of the jury was erroneous, the question as to whether there should be a new trial or not is to be heard and decided at *nisi prius.*

The defendant is charged with incest with his daughter, who in the indictment is called Etta Peterson. It was claimed that her name was Mary Etta Peterson. The court instructed the jury that, "if the defendant committed the crime with his daughter, and she is commonly and generally known by the name of Etta Peterson, that is sufficient." To this there can be no legal objection. The name is for the identification of the person and to distinguish one from another. It would be absurd to require the use of the name not commonly and generally in use in preference to the one commonly and generally used.

The memorandum on a piece of paper covering a photograph, purporting to be signed by the girl with whom the offense was committed, was offered to show how she wrote her name and rejected. It was manifestly inadmissible. It was not shown to be her handwriting. It was not offered to contradict any thing she had said and it was not admissible to contradict any thing testified to by any other witness—so far as the exceptions disclose.

The motion to set aside the verdict on account of the alleged relationship of one of the jurors was overruled by the justice presiding at the trial. What the fact was, does not appear. Nothing before us shows or tends to show his ruling erroneous.

*Exceptions overruled.*
*Judgment on the verdict.*

WALTON, VIRGIN, PETERS, LIBBEY and SYMONDS, JJ., concurred.